# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 25, 2023

Lyle W. Cayce
Clerk

No. 21-20106

_____

SAM JONES,

*Plaintiff—Appellant*,

*versus*

BOBBY LUMPKIN, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*; ROCKY MOORE,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-cv-531

_____

Before ELROD, HO, and WILSON, *Circuit Judges*.

PER CURIAM:[*]

Sam Jones, Texas prisoner #1787475, appeals the entry of summary judgment denying his religious exercise claims as untimely and unsupported by the record. We agree that Jones's claims are untimely and accordingly affirm.

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 21-20106

## I.

Sam Jones is a prisoner in the Wynne Unit of the Texas Department of Criminal Justice ("TDCJ"). He was sentenced to 70 years of imprisonment for a murder committed on December 27, 1992. He was released on parole on October 28, 2009, before being reincarcerated on June 11, 2012, for aggravated assault against a witness/informant with a deadly weapon. He is now serving the remainder of his 70-year sentence, concurrent with a life sentence for the new offense.

On February 21, 2018, Jones filed suit against Bobby Lumpkin, the Director of the TDCJ, and Rocky Moore, the Senior Warden of the Wynne Unit. Jones brought claims under 42 U.S.C. § 1983 and 42 U.S.C. § 2000cc-1, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), for alleged violations of his right to freely exercise his religion.

Jones alleged that Defendants forced him to violate Islam's strict prohibition against nudity in front of anyone except his spouse. Specifically, he alleged that they subjected him to double strip searches after work shifts in the Wynne Unit's License Tag Plant, where he was assigned to work on July 27, 2012. He also alleged that he was subject to strip searches on the way in and on the way out of the outdoor recreation yard and the indoor gymnasium, and a one-for-one clothing exchange policy that required him to undress and exchange his dirty boxers for clean boxers before showering.[1]

In addition, Jones alleged that Defendants prevented him from buying scented prayer oil from an outside vendor for use in Islamic services.

---

[1] Jones also alleged that his rights were violated through strip searches conducted during lock down cell searches. But he does not challenge those searches on appeal, so we do not address that issue.

2

No. 21-20106

The district court granted summary judgment in favor of Defendants. The district court held that Jones's claims were untimely because Jones filed suit outside of Texas's two-year limitations period for personal injury claims. The district court also held in the alternative that Jones did not offer evidence establishing that Defendants violated his rights.

## II.

"We review a district court's grant of summary judgment de novo, applying the same standards as the district court." *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1026 (5th Cir. 2015). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Federal courts borrow state statutes of limitations to govern claims brought under section 1983." *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999). The parties agree that the applicable limitations period is four years for RLUIPA claims, *see* 28 U.S.C. § 1658, and two years for Section 1983 claims, *Price v. City of San Antonio*, 431 F.3d 890, 892 (5th Cir. 2005).[2]

State law also provides the applicable tolling provisions. *Harris*, 198 F.3d at 156. Under Texas law, the statute of limitations is tolled during the

---

[2] Jones argues that Defendants forfeited the statute of limitations defense because they did not present RLUIPA's four-year statute of limitations to the district court. Even though they argued for the incorrect limitations period, they did make a statute of limitations defense based on the fact that Jones knew or should have known about his injuries as of July 2012.

No. 21-20106

pendency of administrative proceedings. *Rodriguez v. Holmes*, 963 F.2d 799, 805 (5th Cir. 1992).

Although federal courts look to state law for the "applicable limitations period and tolling provisions," federal law determines "when a civil rights action accrues." *Harris*, 198 F.3d at 156. "Under federal law, a cause of action accrues the moment the plaintiff knows or has reason to know of the injury that is the basis of his complaint." *Helton v. Clements*, 832 F.2d 332, 334–35 (5th Cir. 1987). In other words, the statute of limitations begins to run at the point when the plaintiff "knew or in the exercise of reasonable diligence should have discovered" his injuries. *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 646 F.3d 185, 190 (5th Cir. 2011), *abrogated on other grounds by United States v. Kwai Fun Wong*, 575 U.S. 402 (2015). "[A] plaintiff need not have actual knowledge if the circumstances would lead a reasonable person to investigate further." *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995).

## III.

Jones argues that his claims are timely and that the district court mischaracterized the facts when it held otherwise. We disagree. We address each alleged violation in turn.

## A.

First, Jones proffers his timeline of the events concerning the prayer oil policy. In 2006, Jones filed a RLUIPA claim against the TDCJ for denying him the use of prayer oil. Then in 2008, the TDCJ announced a new policy that would allow Jones to purchase prayer oil. Shortly afterwards, in 2009, he was released from custody. On August 5, 2009, the TDCJ implemented a policy that prohibited the purchase of scented prayer oil from outside vendors, and only allowed the purchase of an unscented substitute from the commissary.

4

No. 21-20106

In 2012, Jones was reincarcerated in the Wynne Unit. He did not have the funds to purchase scented prayer oil until May 2017. So he only found out about the policy in 2017, when he unsuccessfully attempted to procure scented prayer oil from an outside vendor for the first time.

Nothing in the record supports Jones's assertion that he did not have the funds to purchase scented prayer oil until May 2017. Jones cannot substantiate his timeliness theory. So we are left with the fact that Jones claims that he needs scented prayer oil for the free exercise of his religion, but did not attempt to purchase oil between June 2012, when he returned to the Wynne Unit, and May 2017.

The prayer oil policy injured Jones the moment he was reincarcerated, because it prevented him from carrying out a "Mandatory Islamic Practice." And Jones, "in the exercise of reasonable diligence[,] should have discovered" his injuries not long after he was reincarcerated. *In re FEMA*, 646 F.3d at 190. Based on the record, a reasonable person in Jones's shoes would have "investigate[d] further." *Piotrowski*, 51 F.3d at 516. He would have attempted to purchase scented prayer oil—which Jones allegedly needs for "*daily* prayers"—the day he was reincarcerated. Or he would have at least inquired about the prayer oil policy, given his previous litigation against the TDCJ over the same issue. Either way, he would have discovered that the prayer oil policy injured him—by preventing him from accessing scented prayer oil—wholly apart from and before any attempt to purchase oil.

Thus, Jones's claims based on the prayer oil policy began to accrue in 2012, when he was reincarcerated and should have known that he was injured by the prayer oil policy. So the statute of limitations ran in 2014 for his Section 1983 claim and in 2016 for his RLUIPA claim. Because he brought his claims on February 21, 2018, his prayer oil related claims are time-barred unless a tolling doctrine can save them.

No. 21-20106

The record shows that Jones filed a "Step 1" grievance on June 28, 2017, alleging that Wynne Unit grievance investigators refused to file and process a prior grievance submitted on June 20, 2017, regarding the warden's retaliation against him for attempting to purchase prayer oil from an outside vendor. But neither grievance can save his claims because they were both filed after the statute of limitations had already run on his claims. Thus, there was nothing for the administrative proceedings to toll. Jones's prayer oil related claims are time-barred.

**B.**

Second, Jones argues that his claims challenging the various strip searches are timely because Defendants did not implement *double* strip searches until years after he returned to the Wynne Unit in 2012. Jones does not provide an exact date, but states that the double strip searches were implemented shortly before he filed his grievances against the strip searches in 2017.

There is no record evidence to support Jones's assertion that the double strip searches were implemented shortly before the filing of his grievances, which themselves are not in the record.

But at the end of the day, it is immaterial whether Defendants conducted a *single* search or a *double* search. Jones's alleged injury stems not from the duplicative nature of a double search, but from the very fact of a strip search in which his naked body is exposed to others. Jones concedes that Defendants conducted at least a single strip search back in July 27, 2012, when he was first assigned to the License Tag Plant. And he does not dispute that he was subject to recreation strip searches when he was reincarcerated on June 11, 2012. Jones knew of his alleged injuries in 2012, so Jones's strip search related claims all accrued in 2012.

6

No. 21-20106

Since he did not bring those claims until February 21, 2018, they are time-barred unless they were tolled.  Jones's complaint alleges that he filed grievances regarding the strip search policy on February 24, 2017, and three times in March 2017.  But there is no record evidence of those grievances.  In any case, Jones admits that the grievances were filed in 2017, which is *after* the statute of limitations had already run.  Thus, for summary judgment purposes, Jones's claims were not tolled by any administrative proceedings.  His strip search related claims are time-barred.

## C.

Jones does not defend the timeliness of the claims arising from the one-for-one clothing exchange policy.  But he makes a catchall argument that all of his claims are timely under the continuing violation doctrine.

"The continuing violation doctrine is a federal common law doctrine governing accrual."  *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 740 (5th Cir. 2017).  It is "equitable in nature and extends the limitations period on otherwise time-barred claims."  *Texas v. United States*, 891 F.3d 553, 562 (5th Cir. 2018) (quotations omitted).  It "should be invoked 'sparingly,' only when the situation calls for it."  *Id.*

In particular, "the continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims."  *Cowell v. Palmer Tp.*, 263 F.3d 286, 295 (3rd Cir. 2001).  To allow prisoners to sit on alleged violations of their rights would be "contrary to the policy rationale of the statute of limitations."  *Id.*

As already explained, Jones should have known of his injuries when he was reincarcerated in 2012.

Jones's inability to access scented prayer oil was not the cumulative effect of a series of actions that constituted one unlawful act, but rather the

result of a policy that existed and harmed him on the day he was reincarcerated. His alleged inability to get scented prayer oil from outside vendors in 2017 is not "a continuing tort, but rather the continuing effects of an alleged harm" that existed when he was reincarcerated in 2012. *See Hearn v. McCraw*, 856 F. App'x 493, 496 (5th Cir. 2021) (holding that yearly requirements to register as sex-offenders, which allegedly violated the plaintiffs' deferred adjudication agreements, were not separate violations).

The inapplicability of the continuing violation doctrine to the strip searches and the one-for-one clothing exchange policy is even clearer. The first strip search Jones was subjected to and the first shower Jones took, after he was reincarcerated in 2012, were both discrete acts. Those discrete acts cannot support a continuing violation theory. *See Heath*, 850 F.3d at 741. To be timely, the first discrete acts must have occurred within the applicable limitations period. *See id.* They did not.

In sum, all of Jones's claims are untimely. We affirm.